**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ALAN KELLY,

                Plaintiff,

V.

DISTANT HORIZONS LLC, BLUE
ETHER, LLC, and GL YACHTING USA
INC.,

                Defendants.

Civil Action No.: #

## COMPLAINT

NOW COMES, Plaintiff, Alan Kelly ("Kelly"), by and through his undersigned counsel, and hereby files his Complaint against the Defendants, Distant Horizons, LLC ("Seller"), Blue Ether, LLC ("Buyer"), formerly known as MS Management, LLC, and GL Yachting USA Inc. ("Escrow Agent") (collectively "Defendants"), as follows:

## PARTIES

1. The Plaintiff, Alan Kelly, is an individual acting as yacht broker residing in Palma de Mallorca, Spain.

2. The Defendant, Distant Horizons, LLC, is a limited liability company duly organized and existing under the laws of Delaware.

3. The Defendant, Blue Ether LLC, formerly known as MS Management, LLC, is a limited liability company duly organized and existing under the laws of Delaware.

4. The Defendant, GL Yachting USA, Inc. and Escrow Agent, is a corporation organized under the laws of Delaware and existing in Rhode Island.

**JURISDICTION**

5. This is a diversity action pursuant to 28 U.S.C. §1332. The parties pursuant to this action have full diversity and the prayer for relief is over $75,000.

6. This Court has jurisdiction over this conflict and the Defendants who consented to jurisdiction as the Purchase and Sales Agreement ("P&S") explicitly states that the agreement is to be construed pursuant to the laws of Rhode Island. *See* **Exhibit A**, P&S at 10.

7. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendant, GL Yachting USA, Inc., resides in Rhode Island, all Defendants were doing business in Rhode Island, and all relevant actions and omissions giving rise to the claim occurred within Rhode Island.

8. Personal jurisdiction exists over all Defendants since all Defendants maintained sufficient minimal contacts in Rhode Island. Specifically, Defendants engage in systematic and continuous activity in Rhode Island, and the actions and omissions as stated in this Complaint occurred in Rhode Island.

9. Further, all facts leading to the conflict took place in Rhode Island, such as the signing of the P&S, location of the S/Y DASH now known as the S/Y BLUE ETHER ("the Vessel"), sea trials, and other intimate aspects of the transaction at issue.

**FACTUAL ALLEGATIONS**

10. Kelly and Michael Stock ("Stock"), owner of Buyer, became acquainted through one of Stock's personal friends who would buy yachts through Kelly's brokerage.

11. On or about March 27, 2023, Stock made initial contact with Kelly via text about his yacht brokering services and subsequently began utilizing Kelly's services.

12. Throughout the end of March and throughout April of 2023, Kelly found potential yachts that fit Stock's parameters and the pair texted extensively about their strategy and potential acquisition of one such vessel.

13. Stock gave Kelly permission to act on his behalf and make offers on vessels he wanted to acquire. Stock and Kelly exchanged multiple messages demonstrating a client-broker relationship as early as March 27, 2023.

14. Kelly and Stock decided to attend the Palma International Boat Show in 2023. Kelly organized tickets to that show and spent days with Stock visiting vessels at the show. During that show, Stock became interested in the S/Y HIGHLAND FLING which is a Gunboat 68.

15. Kelly attempted to help Stock obtain the S/Y HIGHLAND FLING, but that vessel was under contract and not available for purchase by Stock.

16. On April 5, 2023, Kelly, on behalf of Stock, inquired as a broker about Gunboat 68 yachts with Spike Abram ("Abram") who was the Sales & Brokerage Manager at Gunboat, a manufacturer and reseller of luxury catamarans.

17. Abram then provided Kelly with a list of available and potentially available yachts.

18. Kelly further inquired about the S/Y HIGHLAND FLING, however, Abram informed Kelly on May 2, 2023, that it was no longer available.

19. In the same email, Abram notified Kelly of a sufficiently similar Gunboat 68 named S/Y DASH located in Newport, Rhode Island that was pre-market.

20. Kelly responded on May 2, 2023, that he wanted updates on available Gunboat 68s since his client, Stock, wished to finalize a purchase of that type of vessel in either June or early July of 2023.

3

21. Abram responded on May 2, 2023, that he registered Stock under Kelly's brokerage and a good offer for the vessel would be € 6,000,000 for S/Y DASH and it would be a 10% 50/50 split on brokerage fees.

22. In response, Kelly had several conversations via WhatsApp about the offer on the Vessel with Stock and the terms of the deal. The offer of $6.777 million was, as Stock put it, "our magic number." Kelly made the offer at a conversion rate of €6.1M / $6.777M on behalf of Stock.

23. The offer for the Vessel was subsequently accepted, and the Parties moved forward with the acquisition. Stock requested more information via WhatsApp about conditions of the initial offer, survey, sea trial and if they had a draft contract prepared.

24. During this time, Kelly remained in contact with Abram requesting all the information and initial certificates to draft the first contract.

25. On May 23, 2023, the Buyer and Seller entered into the P&S. *See* Ex. A.

26. On May 25, 2023, Abram sent the escrow information to Kelly.

27. On May 26, 2023, Kelly traveled to Newport, RI to assist with the Vessel's sea trials and survey. Stock purchased Kelly's flight tickets to the USA and sent confirmation via email. He had also booked Kelly a hotel room for the first night.

28. On May 26, 2023, Kelly, Stock, his wife and two children along with Abram met in Newport, Rhode Island. The crew of the Vessel took the group, including Kelly, for an initial sea trial.

29. Abram provided Kelly with recommendations on several surveyor options within the Rhode Island area. Kelly retained marine surveyor Mark Ashton ("Ashton").

30. Ashton knew the Vessel well, as he had already surveyed the Vessel for the previous purchase before that deal was terminated.

31. On May 27, 2023, Abram sent the P&S signed by the seller for Kelly's client Stock as owner of Buyer to sign.

32. On May 28, 2023, Abram distributed all escrow information to Buyer for the deposit to be made on the Vessel and he informed the parties that there would be a Vessel survey performed on May 30, 2023.

33. Kelly organized the shipyard haul out. He arranged inspections and surveys to be completed during his time in Rhode Island.

34. Kelly and Stock discussed the whole process of the pre-survey and post-sale procedures. Stock also utilized Kelly's expertise on hiring crew, purchasing sails, redesigning the Vessel, and other necessary information to maintain the Vessel.

35. On May 30, 2023, the survey inspection began in the shipyard and sea trials on the water thereafter. The rigging inspection was performed last. The survey revealed an issue with the Vessel's starboard engine.

36. Initially the shipyard did not want to replace the engine as it was just recently installed. In response, the shipyard contacted the engine manufacturer, Yanmar, who recommended an oil analysis on the engine. Due to this issue, further sea trials were required, which delayed the sale.

37. While the shipyard was troubleshooting the engine issues, the other defect list of works was completed. The surveyor was unsatisfied with the additional tests and sea trials, leading the shipyard to eventually agree to replace the faulty engine.

38. After the engine was replaced, the sea trials came back satisfactory and all engine parameters for both engines matched.

39. On May 31, 2023, Buyer wired the $677,700 deposit to the escrow account, held by the Escrow Agent.

40. On June 1, 2023, Managing Partner of Gunboat Yachts, Benoit Lebizay, confirmed the receipt of the deposit in escrow.

41. Due to the seriousness of the repairs required to the Vessel's engine, the Parties agreed on a reduction in the purchase price. Additionally, there were defects on the list that could not be completed prior to closing and ordering new parts would take weeks, if not, months. The Addendum to the P&S was subsequently drafted to reduce the price to cover those costs plus labor.  *See* **Exhibit B,** Addendum to the P&S.

42. On June 23, 2023, Kelly sent an email to Abram confirming the final negotiation of price reduction.

43. On June 30, 2023, Parties signed an Addendum to the P&S stating that the name of the Buyer is amended to Blue Ether, LLC, the purchase price is $6,627,000, acceptance date is July 1, 2023, closing will take place July 10, 2023, and the full protocols of delivery will be agreed by July 3, 2023. All other terms of the original P&S remained the same. *See* Ex. B.

44. In July, 2023, the Vessel closing was completed and Stock took possession of the Vessel.

45. On August 30, 2023, Kelly sent an invoice for $338,500.00 to GL.

46. To date, and in violation of the P&S, the Defendants have failed to pay Kelly his earned broker commission.

## COUNT I

## <u>BREACH OF CONTRACT</u>

47. Plaintiff realleges and reiterates his allegations contained in Paragraphs 1 through 46 and incorporates same by reference as through fully set forth herein.

48. Kelly was party to the P&S that included payment to Kelly of his broker commission, which the Defendants breached when they failed to pay his commission.

49. Kelly performed all terms and conditions required of him in the P&S and is therefore entitled to obtain the benefit of the bargain. *See* Ex. A at 7.

50. As a result of Kelly's efforts on Buyer's behalf in brokering the sale of the S/Y DASH, he is entitled to receive compensation.

51. Despite Kelly's demand, Defendants have failed and intentionally refused to pay the commission due.

52. Defendants have failed to comply with their contractual obligations to properly provide Kelly his earned and agreed upon commission pursuant to the P&S.

53. If the Escrow Agent no longer holds the funds that are payable to Kelly, then that Agent has further breached its duty according to the contract by improperly dispersing the funds.

54. As a result of the Defendants' breach of contract, Kelly has suffered damages of approximately $338,500.00, plus attorney's fees pursuant to R.I. Gen. Laws § 9-1-45, and 12% prejudgment interest based on R.I. Gen. Laws § 9-21-10, and other damages to be proven at trial.

WHEREFORE, the Plaintiff, Alan Kelly, prays that this Honorable Court enter Judgment in his favor on Count I for Breach of Contract against the Defendants together with costs and reasonable attorney's fees, and issue any such further relief it deems just and proper.

## COUNT II

## <u>UNJUST ENRICHMENT</u>

55. Plaintiff realleges and reiterates his allegations contained in Paragraphs 1 through 54 and incorporates same by reference as through fully set forth herein.

56. As a result of Kelly's efforts in brokering the transaction of the S/Y DASH on behalf of the Buyer, Kelly is entitled to receive a commission.

57. Kelly reasonably relied on the Defendants', including Stock's, representations concerning payment of the broker commission to Kelly when deciding whether to continue to assist as Broker with the purchase of the Vessel.

58. Kelly would not have continued to work as Broker for the Buyer if he had known that the Defendants would never pay Kelly his earned commission owed under the P&S.

59. Buyer and the other Defendants have retained the benefit of Kelly's brokerage services relating to the purchase of S/Y DASH, and despite proper demand, have failed and intentionally refused to pay commission to Kelly.

60. At all times, Kelly performed all obligations on his part to be performed or was precluded by Defendants from doing so.

61. Buyer and the other Defendants inequitably retained and accepted the benefit of Kelly's broker services without compensating Kelly as required pursuant to the P&S.

62. Due to Defendants' unjust enrichment, Kelly has suffered damages in the sum of approximately $338,500,00, plus attorney's fees pursuant to R.I. Gen. Laws § 9-1-45, and 12% prejudgment interest based on R.I. Gen. Laws § 9-21-10, and other damages to be proven at trial.

WHEREFORE, the Plaintiff, Alan Kelly, prays that this Honorable Court enter Judgment in his favor on Count II for Unjust Enrichment against the Defendants together with costs and reasonable attorney's fees, and issue any such further relief it deems just and proper.

## COUNT III

## <u>QUANTUM MERUIT</u>

63. Plaintiff realleges and reiterates his allegations contained in Paragraphs 1 through 62 and incorporates same by reference as through fully set forth herein.

64. As a result of Kelly's efforts on Buyer's behalf in brokering for the S/Y DASH, he is entitled to receive his earned commission from Defendants.

65. Despite Kelly's demands, Defendants have failed and intentionally refused to pay Kelly any commission.

66. At all times, Kelly performed all obligations on his part to be performed or was precluded by Defendants from doing so.

67. Due to the Defendants' failure to pay Kelly commission, he has suffered damages of approximately $338,500,00, plus attorney's fees pursuant to R.I. Gen. Laws § 9-1-45, and 12% prejudgment interest based on R.I. Gen. Laws § 9-21-10, and other damages to be proven at trial.

WHEREFORE, the Plaintiff, Alan Kelly, prays that this Honorable Court enter Judgment in his favor on Count III for Quantum Meruit against the Defendants together with costs and reasonable attorney's fees, and issue any such further relief it deems just and proper.

## COUNT IV

### PROMISSORY ESTOPPEL

68. Plaintiff realleges and reiterates his allegations contained in Paragraphs 1 through 67 and incorporates same by reference as through fully set forth herein.

69. Since March 2023 until the July 2023 closing date, Stock made it unambiguous that Kelly was an agent of his in acquiring a sailing yacht.

70. The broker relationship Kelly and Stock (for the Buyer) was reduced to writing in the P&S binding of all Defendants in the payment of Kelly's brokerage services.

71. In the P&S, Defendants made a clear and unambiguous promise of compensation to Kelly.

72. Kelly accepted the offer contained in the P&S and acted in reliance of its terms.

73. Kelly performed all responsibilities that were made pursuant to his agreement with the Defendants and earned his commission.

74. Kelly detrimentally relied upon Defendants' promises by performing all the necessary brokerage services for Buyer to obtain S/Y DASH without ever being compensated for such efforts.

75. It would be an injustice for the Defendants to retain the full value of Kelly's labor as a yacht broker without compensating him pursuant to the terms of the P&S.

76. Due to the actions of the Defendants Kelly has suffered damages of approximately $338,500,00, plus attorney's fees pursuant to R.I. Gen. Laws § 9-1-45, and 12% prejudgment interest based on R.I. Gen. Laws § 9-21-10, and other damages.

WHEREFORE, the Plaintiff, Alan Kelly, prays that this Honorable Court enter Judgment in his favor on Count IV for Promissory Estoppel against the Defendants together with costs and reasonable attorney's fees, and issue any such further relief it deems just and proper.

## PRAYERS FOR RELIEF

The Plaintiff, Alan Kelly, demands a Trial by Jury against Defendants, Distant Horizons, LLC, Blue Ether, LLC, and GL Yachting USA Inc. Plaintiff prays that this Honorable Court finds in favor of him on all Counts and award all damages that are just and proper against Defendants as follows:

A. $338,500.00 in damages due to the nonpayment of Kelly's commission in breach of the P&S.

B. Prejudgment Interest set at 12% *per annum*.

C. Attorney's fees and costs of this litigation.

D. Any further relief this Honorable Court deems just and proper.

Respectfully submitted
**Plaintiff, Alan Kelly**

"/s/ Kirby L. Aarsheim"
Kirby L. Aarsheim
Bar No. 8368
FARRELL SMITH O'CONNELL
AARSHEIM APRANS, LLP
106 Francis Street, Suite B2
Providence, RI 02903
Tel:  (401) 424-5441
Cell: (508) 989-1821
Fax:  (978) 666-0383
kaarsheim@fsofirm.com